IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                                          PLAINTIFF

v.                                    No. 4:10CR00055 JLH

ANTHONY GENE MAYS                                                                DEFENDANT

## ORDER

Anthony Gene Mays has been indicted and charged with possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); attempting to kill an officer of the United States government in violation of 18 U.S.C. §§ 1114 and 1111; and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). This is the second time that Mays has been indicted on these charges. He was previously indicted in Case No. 4:09CR00135-SWW. In that action Mays was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); attempted murder of a federal law enforcement officer in violation of 18 U.S.C. §§ 115(a)(1) and 1113; and the use of a firearm in connection with an attempted murder in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The charges in both actions stem from the same incident in Blytheville, Arkansas, on April 4, 2009.

In the first case, Mays filed a motion to suppress a photographic lineup and in-court identification in which he asked the Court to suppress identification by Rick Yopp and Frank Hatcher, arguing that the photographic lineup presented to Yopp and Hatcher was unduly suggestive. The Honorable Susan Webber Wright, who was the presiding judge in that case, referred the motion to suppress to United States Magistrate Judge Joseph J. Volpe for recommended disposition. Judge

Volpe conducted an evidentiary hearing and issued a report and recommendation on February 17, 2010. Judge Volpe recommended that the motion be denied.

On February 19, 2010, the United States moved to dismiss the indictment, and that motion was granted. Mays did not have an opportunity to object to the report and recommendation, nor did Judge Wright have the opportunity to rule on any objections, before the indictment was dismissed.

The indictment in this case was filed on March 4, 2010, and concerns the same conduct as the indictment in Case No. 4:09CR00135-SWW. Mays has now filed objections to the magistrate's recommendation and renewed motion to suppress. The government has responded and has asked the Court to adopt the recommended disposition of Judge Volpe.

The Court has listened to tapes encompassing the entire evidentiary hearing before Judge Volpe and has reviewed the exhibits introduced at that hearing, except for a brown jacket introduced as Exhibit No. 5 and the video deposition of Jimmy Lunsford introduced as Exhibit No. 9. While the Court has not reviewed the video deposition of Lunsford, the testimony was recorded on the audio recording system operating in Judge Volpe's courtroom during the evidentiary hearing, so the Court has heard the testimony of Lunsford, along with all of the other testimony offered during that hearing.

The parties apparently agree that the Court can consider Judge Volpe's report and recommendation as though the Court had referred the matter to Judge Volpe in this action. The Court has conducted a *de novo* review of the record and hereby adopts the proposed findings and recommended disposition of Judge Volpe as the Court's opinion in this case, except that Judge Volpe's proposed findings and recommended disposition refer to Frank Hatcher as Frank Fletcher, which is incorrect. For the reasons stated by Judge Volpe, the Court finds that the photographic

lineup was not impermissibly suggestive and, moreover, even if the lineup had been unduly suggestive, the identification evidence offered by Yopp and Hatcher is nonetheless reliable based upon the factors stated by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972). The Court has attached to this order Judge Volpe's proposed findings and recommendations so that they will be a part of the record in this action.

The objections to the magistrate's recommendations are overruled, and the renewed motion to suppress is denied. Document #15.

IT IS SO ORDERED this 12th day of April, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA                                           PLAINTIFF

V.                          NO. 4:09-cr-00135-01 SWW-JJV

ANTHONY GENE MAYS                                                  DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATIONS
## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. The trial in this matter is scheduled for February 22, 2010. Defendant filed a Motion to Suppress on February 10, 2010 and the Court scheduled a hearing on the motion at the parties' earliest convenience, February 17, 2010.

Given the expedited nature of this matter, any party may serve and file written objections to this recommendation no later than 5:00 p.m., Thursday, February 18, 2010. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of

>proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

## I. INTRODUCTION

Defendant Anthony Gene Mays filed a Motion to Suppress Photographic Lineup and In-Court Identification (Doc. No. 21). The United States filed a response (Doc. No. 25). The Defendant contends that police conducted an impermissibly suggestive photographic lineup by placing Mays' photograph in a lineup with grossly dissimilar individuals. Additionally, the Defendant believes police violated his due process rights by sending the lineup to a witness via e-mail. The motions were referred to the undersigned for recommended disposition on February 10, 2010, and an evidentiary hearing was held on February 17, 2010. Based on the testimony and exhibits presented at the evidentiary hearing as well as the applicable law on this subject, Defendant Mays' motion to suppress should be denied.

## II. BACKGROUND

Anthony Gene Mays is charged with being a felon in possession of a firearm, attempted murder of a federal agent, and using a firearm during and in relation to a crime of violence. The charges arise from an incident between Mays and Department of Agriculture Special Agent Rick Yopp. Yopp testified that on Saturday morning, April 4, 2009, he was doing yard work for his mother in Blytheville, Arkansas. While Yopp was dragging limbs to the street to be hauled away, he observed an African-American male walking down the street. Yopp remembered that the individual was wearing a "brown puffy coat," a white or tan shirt hanging outside of his pants, and dark blue jeans. The coat caught Yopp's attention because it was warm outside. The individual

2

approached Yopp and they exchanged greetings. The individual then stated he was looking for work, but Yopp provided no response to his request. Yopp said the individual was approximately six feet away from him during this interaction. Yopp then observed the individual walk to neighbor Jimmy Lunsford's house, presumably to ask the 89 year old Lunsford for work. Yopp continued working in his mother's yard, but kept watching toward Lunsford's house. Yopp "had a bad gut feeling" because he did not see the individual leave the elderly Lunsford's house. Yopp eventually decided to retrieve his personal firearm and go to Lunsford's house to check on the neighbor. On his way to the house, Yopp saw the individual walking down the street away from Lunsford's house. The man looked back at Yopp "two to three times" and began walking faster away from the house. Yopp knocked on Lunsford's door and heard Lunsford yell, "Come in, I need help." Yopp went inside the house and discovered Lunsford had been assaulted and robbed of a gun and money. Yopp immediately called 911.

Lunsford testified[1] that he had been sitting in a chair in his den when an individual approached him from behind, stuck a gun in his face, threatened to shoot him and demanded his wallet. Lunsford instinctively turned his head and was able to see the gun being held by an African-American man wearing a brown jacket with a white shirt hanging outside of his dark colored pants. Lunsford also recognized the gun as his own gun which he kept in a night stand. Lunsford tried to comply with the armed robber's demands, but his wallet became stuck in his pants. The robber then struck Lunsford on the head and he fell on the floor unconscious.

After Yopp reported the incident to 911, Yopp ran to his vehicle and went looking for the man he had seen earlier. Yopp drove down several streets until he came upon a white pickup truck in the driveway of a house a few blocks away. Yopp observed two African-American men in the

---

[1] Lunsford's video deposition was played during the evidentiary hearing.

pickup. He immediately recognized the passenger as the individual he had seen earlier in the "brown puffy coat." The driver was Frank Hatcher. Yopp blocked the driveway with his vehicle and identified himself as a federal agent. He instructed the occupants to show their hands and exit the vehicle. Hatcher complied but the passenger began shouting back at Yopp. The passenger then slid across the seat and exited the truck. Yopp saw a pistol in the individual's hand when he fled around the truck. Yopp jumped back inside his vehicle and began looking for the fleeing individual. The individual ran back toward Yopp and shot three times at him. Yopp exited his truck to take cover and again instructed the individual to drop his gun. The individual again fled. Yopp then circled the block, looking for the individual and the man came back toward Yopp and fired two more shots. Yopp again got out of his truck to take cover. The individual ran in front of another house and disappeared.

A Blytheville Police patrol unit arrived shortly thereafter and Yopp went with the officer to look for the suspect. Another unit had stopped a vehicle carrying three men and the police took Yopp to the vehicle to see if any of these men fit the description of the robber. Yopp saw all three men and excluded them as suspects. During the investigation, Yopp described the individual to police as an African-American male between the ages of eighteen (18) and thirty-five (35) and had a medium complexion.

On April 8, 2009, Detective Scott Adams of the Blytheville Police Department received information identifying Anthony Gene Mays as a suspect in the robbery and shooting. Adams compiled photo spreads using web-based computerized Justice Exchange. The Justice Exchange program allowed Detective Adams to input Mays' identifying information and Justice Exchange automatically provided photographs of individuals similar to the suspect, Mays.

4

Adams first showed a photo spread which contained six black-and-white photographs to the driver of the white pickup truck, Frank Hatcher. According to Adams, Hatcher quickly identified Mays in the lineup.

Adams also prepared a photographic lineup for Yopp, but Yopp was working in south Arkansas. Therefore, Adams e-mailed a photo spread containing 12 color photographs. Adams sent a note along with the photo spread that stated: "Here are two lineup (sic) that the suspect could or could not be in." Yopp said he was easily able to identify Mays although he was confused about the height information in the picture. Yopp knew Mays was not as tall as one side of the marks would indicate. Adams told Yopp he should disregard the "hatch marks" and Yopp confirmed that Mays was the individual from April 4, 2009.

### III. APPLICABLE LAW

In considering whether due process is violated by use of photo identification procedures, the United States Supreme Court has held that:

> each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Simmons v. United States*, 390 U.S. 377, 384 (1968).

The likelihood that misidentification may result from an unnecessarily suggestive identification procedure, and not the suggestive procedure itself, forms the basis for a violation of the defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972). The central question is whether under the "totality of the circumstances" the identification was reliable even though the procedure was suggestive. The factors to be considered in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the

5

crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation." *Id.* at 199-200; *see Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Stovall v. Denno*, 388 U.S. 293, 302 (1967); *United States v. Smith*, 602 F.2d 834, 837 (8th Cir. 1979).

## IV. DISCUSSION

In applying the analysis to the facts in this case, the Court finds that the identification evidence is reliable, not impermissibly suggestive, and should be admitted at trial. In arriving at this conclusion, the Court employed a two-step analysis in determining the admissibility of the identification testimony. The first step requires that the Defendant prove the identification procedure was impermissibly suggestive. *Biggers*, 409 U.S. at 189-99. If the Defendant is able to meet his burden in this regard, the Court then considers whether this identification evidence is nonetheless reliable using the five *Biggers* factors.

The Court first finds that Mays has failed to meet his burden of showing that the photographic lineup is impermissibly suggestive. The defense asserts the photographs are grossly dissimilar to Mays. Mainly, the defense attacks the hair length and skin tone. However, after careful review of the photographic lineup, the Court concludes the pictures are not grossly dissimilar. Rather, the photographs depict several individuals whose appearances are quite similar to the Defendant.

Additionally, it is noteworthy that the lineup was mainly computer generated. While Detective Adams was still required to choose the final photographs used in the lineup, the photographs were generated by the Justice Exchange program based on Mays' identifying

information. The use of this program enabled Adams to compile photographs in a less subjective manner preserving Mays' due process rights.

While the Court concludes that Mays has not met his burden in the first step, out of an abundance of caution, the Court went on to the second step and evaluated Mays' identification based on the five *Biggers* factors. Both Agent Yopp and Frank Fletcher had numerous opportunities to view Mays. Importantly many of those opportunities were not during periods of stress or excitement. Yopp first saw Mays when he approached asking for work. Yopp testified he was approximately six feet away from Mays during this interaction. Additionally, Yopp viewed Mays while he walked away down the street looking back at Yopp. Finally, Yopp viewed Mays several times when he arrived at house where Mays and Fletcher were in the pickup truck. Although during this last interaction Yopp was experiencing great stress and excitement, he still had ample opportunity to view Mays. As Mays' counsel correctly noted, Yopp's initial description of the perpetrator to police was rather broad. However, nothing in this description was inconsistent with Mays' appearance.

Likewise, Fletcher had an adequate opportunity to view Mays. When Yopp arrived, Fletcher and Mays were entering the pickup truck. Clearly, Fletcher would have had sufficient opportunity to view Mays during this interaction.

Both Yopp and Hatcher were shown the lineup only four days after this incident and, according to the testimony at the evidentiary hearing, had no difficulty picking out Mays from the lineup. Additionally, Yopp positively identified Mays at the hearing.

Finally, Mays' objection to the photographic lineup being presented to Yopp by e-mail is without merit. The defense admits they have no legal authority to support their objection but just recognize it as being "unorthodox." Detective Adams sent the photo spread to Agent Yopp by e-

mail out of necessity and, given the *Biggers* timing factor, that decision in fact comports with concepts of due process.

## V. CONCLUSION

Accordingly, there was no substantial likelihood of misidentification of Mays in this case. The totality of the circumstances point directly to Mays as the perpetrator of the crimes in question. IT IS THEREFORE RECOMMENDED that the motion to suppress be denied.

DATED this 17th day of February, 2010.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE